IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 4, 2014

**WALTER WARE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Obion County**
**No. CC-12-CR-154      William B. Acree, Jr., Judge**

**No. W2013-01079-CCA-R3-PC  - Filed April 28, 2014**

The petitioner, Walter Ware, appeals the denial of his petition for post-conviction relief, arguing that he received ineffective assistance of trial counsel. Based upon our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Beau E. Pemberton, Dresden, Tennessee, for the appellant, Walter Ware.

Robert E. Cooper, Jr., Attorney General and Reporter; Caitlin E.D. Smith, Assistant Attorney General; Thomas A. Thomas, District Attorney General; and Kevin D. McAlpin, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

The petitioner and Jacqueline Elendt, the infant victim's parents, were indicted for aggravated child abuse, aggravated child neglect, and aggravated child endangerment. Elendt pled guilty to child abuse and child neglect and agreed to testify against the petitioner at trial. Following a jury trial in 2010, the petitioner was convicted of the charged offenses and the trial court merged the convictions and sentenced the petitioner to sixteen years at 100% in the Department of Correction. His convictions were affirmed by this court on direct appeal, and his application for permission to appeal was denied by our supreme court. State v. Walter Andrew Ware, No. W2010-01992-CCA-R3-CD, 2011 WL 4716238, at *1 (Tenn. Crim. App. Oct. 7, 2011), perm. app. denied (Tenn. Feb. 15, 2012).

Our direct appeal opinion shows that the petitioner's convictions were based on his abuse of his infant daughter who sustained bruises on her arms, torso, back, right thigh, right cheek, right eyelid, and right ear; fractures of her right ninth, tenth, and eleventh ribs, and left seventh, eighth, ninth, and eleventh ribs; two fractured tibias, one each in her lower legs, and a third fracture to her right femur; extensive retinal hemorrhages in both eyes; extensive hemorrhaging on both hemispheres of her brain; and a significant area of a hematoma in the "falx" area of her brain. Id. at *3-4. Dr. Karen Lakin, the medical director for the Child Assessment Program at Le Bonheur Children's Medical Center in Memphis where the victim was hospitalized, testified that the victim's injuries "could have been caused by [her] being shaken to the point that her ribs were flailing back and forth." Id. at *3. The victim's injuries also indicated she had suffered abusive head trauma, and the doctor opined that her seizures were caused by the injuries to her tissue and the lack of oxygen. Dr. Lakin testified that "the force required to cause [the victim's] injuries was so great that any reasonable person would have recognized that it would have hurt or injured a child." Id. at *4. Dr. Lakin further testified that the victim's injuries were consistent with "Shaken Baby Syndrome" and were life-threatening. Id.

On December 11, 2012, the petitioner filed a *pro se* petition for post-conviction relief, alleging he received ineffective assistance of trial counsel. Post-conviction counsel was subsequently appointed, and an evidentiary hearing was held on April 5, 2013, at the beginning of which counsel advised the post-conviction court of the two issues being raised: (1) trial counsel failed to challenge the evidence; and (2) trial counsel failed to call Dr. O.C. Smith on behalf of the petitioner.

At the evidentiary hearing, the petitioner testified that trial counsel represented him at trial and on appeal. Counsel met with him four or five times, and their discussions focused on the testimony of the co-defendant, Jacqueline Elendt, against the petitioner and plea bargains. Counsel did not discuss defense strategy with him and did not provide him with written discovery until "close to trial." The petitioner said that trial counsel did not present any evidence to counteract the State's allegations and did not prepare for trial. The petitioner acknowledged that trial counsel's cross-examination of Elendt elicited testimony that other adults lived in the house with the victim and that Elendt sometimes left the victim with one of those adults, Ms. Northam. He agreed that during counsel's cross-examination of Ms. Northam, she testified that she had previously babysat the victim and that she had never seen the petitioner do anything inappropriate to the victim. The petitioner recalled that counsel's questioning of the State's expert, Dr. Lakin, elicited testimony that the victim's skull fractures could have been caused by a fall from a chair or during birth and that the victim's fever could have been the cause of the seizures and not the result of Shaken Baby Syndrome.

The petitioner said that he and trial counsel discussed retaining an expert witness, Dr. O.C. Smith, and that there was money available to retain an expert. Counsel did not tell the petitioner about his discussions with Dr. Smith, call Dr. Smith to testify at trial, or explain why he did not call Dr. Smith. The petitioner acknowledged that trial counsel filed a motion for an investigator to be appointed, which the trial court denied. He acknowledged that counsel informed him of a plea offer of four years suspended to time served, which he rejected.

Trial counsel testified that he had worked as a prosecutor and as a defense attorney for approximately twenty-five years and had tried between twenty and thirty aggravated child abuse cases. Regarding the petitioner's case, he requested and obtained funding for an independent expert, Dr. O.C. Smith. He discussed the case with Dr. Smith three or four times and sent him the medical records to review. After Dr. Smith reviewed the evidence, he informed trial counsel that his testimony would not be favorable to the petitioner. Counsel advised the petitioner "[o]nce or twice" that Dr. Smith's testimony would not be helpful. Counsel did not seek another expert because "these kind of experts are hard to come by" and Dr. Smith was "renowned and qualified in this area." He said that Dr. Smith gave him "quite a bit of fodder for cross-examination."

Trial counsel said that the petitioner asked for discovery "almost from the beginning" and that he sent the petitioner everything he had. Counsel said that he met with the petitioner "well over 10" times before trial, contrary to the petitioner's testimony that they only met four or five times. Counsel said that he "lived and breathed this case for . . . six months, maybe nine months." He said he spent "hours and hours and hours" on the petitioner's case, including trips to Memphis to speak with Dr. Lakin, to Fulton to locate the petitioner's parents, and to Ms. Northam's house and place of employment. Counsel informed the petitioner of the results of his meeting with Dr. Lakin and provided him a copy of her report. Counsel said that Dr. Lakin and Dr. Smith both agreed that the victim's injuries were not accidental. Counsel said that he cross-examined Dr. Lakin for approximately two hours and that he spent a substantial amount of time preparing for it.

Trial counsel acknowledged that Elendt testified at trial that she did not see the petitioner do anything to the victim. He elicited testimony from Elendt on cross-examination that Ms. Northam, Ms. Northam's boyfriend, and Ms. Northam's six-year-old child also lived in the home with the victim and had access to the victim.

On April 10, 2013, the post-conviction court entered an order denying the petition on the basis that the petitioner failed to show that he received ineffective assistance of trial counsel. This appeal followed.

## ANALYSIS

The petitioner argues that he received ineffective assistance of trial counsel because counsel did not call Dr. Smith as an expert witness at trial.

Post-conviction relief "shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103 (2012). The petitioner bears the burden of proving factual allegations by clear and convincing evidence. Id. § 40-30-110(f). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Wiley v. State, 183 S.W.3d 317, 325 (Tenn. 2006). When reviewing factual issues, the appellate court will not reweigh the evidence and will instead defer to the post-conviction court's findings as to the credibility of witnesses or the weight of their testimony. Id. However, review of a post-conviction court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). The issue of ineffective assistance of counsel, which presents mixed questions of fact and law, is reviewed *de novo*, with a presumption of correctness given only to the post-conviction court's findings of fact. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

To establish a claim of ineffective assistance of counsel, the petitioner has the burden to show both that trial counsel's performance was deficient and that counsel's deficient performance prejudiced the outcome of the proceeding. Strickland v. Washington, 466 U.S. 668, 687(1984); see State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The Strickland standard is a two-prong test:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.

The deficient performance prong of the test is satisfied by showing that "counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)

(citing Strickland, 466 U.S. at 688; Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975)). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The prejudice prong of the test is satisfied by showing a reasonable probability, *i.e.*, a "probability sufficient to undermine confidence in the outcome," that "but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

In its order denying the petition, the post-conviction court stated:

> The thrust of the petitioner's claim of ineffective assistance of counsel is that trial counsel failed to call Dr. O.C. Smith as a defense witness. However, Dr. Smith did not testify at the post-conviction hearing nor was an affidavit, statement, stipulation, or summary as to what his testimony would have been had he testified. Accordingly, this Court cannot determine whether the absence of Dr. Smith's testimony affected the trial in this case. . . .

> Accordingly, this Court finds that the petitioner has failed to establish that his trial counsel was ineffective or that trial counsel's performance in any way prejudiced his defense.

We agree with the post-conviction court, for this court also is left to speculate as to what Dr. Smith's testimony might have been if he had testified at the evidentiary hearing. That we cannot do; so, accordingly, we conclude that the record supports the determination that the petitioner is not entitled to post-conviction relief.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
ALAN E. GLENN, JUDGE

-5-